Reuven L. Cohen (Bar No. 231915)
rcohen@cohen-williams.com
Alyssa D. Bell (Bar No. 287751)
abell@cohen-williams.com
Michael V Schafler (Bar No. 212164)
mschafler@cohen-williams.com
**COHEN WILLIAMS LLP**
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone:   (213) 232-5160
Facsimile:    (213) 232-5167

Attorneys for Defendant
FRANZ GREY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　Plaintiff,<br><br>　　vs.<br><br>FRANZ GREY<br><br>　　　Defendant. | Case No. 2:18-CR-00412-CAS<br><br>**NOTICE OF MOTION AND MOTION FOR RETURN OF PROPERTY**<br><br>Date:  January 25, 2021<br>Time: 1:30 p.m.<br>Judge: Hon. Christina A. Snyder<br><br>[Proposed Order filed concurrently herewith] |

TO UNITED STATES ATTORNEY NICOLA T. HANNA AND ASSISTANT UNITED STATES ATTORNEY KEVIN B. REIDY:

PLEASE TAKE NOTICE that on January 25, 2021, at 1:30 p.m., or as soon thereafter as they matter may be heard, in the courtroom of the Honorable Christina A. Snyder, United States District Judge, defendant Franz Grey will bring on for hearing the following motion:

## **MOTION**

Defendant Franz Grey, by and through his retained counsel, Reuven L. Cohen, Alyssa D. Bell, and Michael V Schafler, hereby moves this Honorable Court for an order directing the government to return money and other property unlawfully seized from his residence at the time of his arrest.

Following the Ninth Circuit Court of Appeals' affirmance of this Court's suppression of evidence in this case, the government has dismissed its charges against Mr. Grey. Nevertheless, the government has not returned all of the property it illegally seized from Mr. Grey's home in May 2018.  In pre-filing discussions, the government has contended that it does not have, and has never had, the property that Mr. Grey seeks herein in its possession.  (Cohen Decl. at ¶ 12.)  Yet, a Special Agent of the Federal Bureau of Investigation has publicly admitted, in a recorded interview, that law enforcement seized approximately $500,000.00 from Mr. Grey's residence, only $270,000.00 of which it has returned.  Pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, Mr. Grey now seeks the return of all evidence – including $230,000.00 in cash, gold coins, silver dollars, other precious metals, and jewelry (family heirlooms, including a Patek Philippe 18 KT skeleton pocket watch) – seized by law enforcement pursuant to illegal searches of his home.

/ /

/ /

/ /

1    This motion is based on the attached Memorandum of Points and Authorities, the
2    accompanying Declarations and Exhibits, all files and records in this case, and any
3    evidence and argument as may be presented at the hearing on the motion.  Additionally, to
4    the extent the government submits admissible evidence sufficient to dispute the facts stated
5    in Mr. Grey's Motion, an evidentiary hearing is necessary to resolve any such disputes.

6

7                                             Respectfully Submitted,

8    Dated:  December 23, 2020          **COHEN WILLIAMS LLP**

9

10                                       By:  _/s/ Alyssa D. Bell_
                                              Reuven L. Cohen
11                                            Alyssa D. Bell
                                              Michael V Schafler
12                                            Attorneys for Defendant,
                                              FRANZ GREY
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR RETURN OF PROPERTY

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.   INTRODUCTION**

In May 2018, law enforcement subjected Franz Grey to repeated unlawful searches of, and seizures from, his home.  These unconstitutional law enforcement activities not only led to Mr. Grey's wrongful arrest and prosecution – which finally ended when the Ninth Circuit Court of Appeals affirmed this Court's suppression of the evidence derived from the unlawful searches – but also the illegal seizure of his life savings, including $500,000.00 in cash, precious valuables, and treasured family heirlooms.

Although Mr. Grey's case is over, one issue remains unresolved: the return of all of the money and valuables seized from Mr. Grey without justification.  Since his arrest, Mr. Grey has consistently claimed that the government seized not less than $500,000.00 in cash, gold coins, silver dollars, precious metals, and jewelry from his home.  To date, the government has returned approximately $270,000.00.  But it has refused to acknowledge that it seized the remaining $230,000.00, refused to acknowledge that it ever took possession of Mr. Grey's valuable personal property, and refused to return anything further to Mr. Grey.

The government's position is squarely contradicted by the recorded statements of its own agent, Federal Bureau of Investigation ("FBI") Special Agent Tony Logan, who was present at, and involved in, the unlawful searches of Mr. Grey's residence.  Speaking on the podcast "Best Case Worst Case," Special Agent Logan, who described Mr. Grey's case in detail, stated that agents seized approximately $200,000-250,000.00 from Mr. Grey's house during their first search and then, during a second search, seized an additional $200,000-300,000.00.  (Declaration of Reuven L. Cohen ("Cohen Decl."), at Exhibits 9 (Podcast at 33:35, 34:00) and 10 (Transcript at 2:9-10, 2:12-14).)

Mr. Grey now seeks the return of *all* his unlawfully seized property – to have what is rightfully his restored.  The government's contention that it did not seize, and does not possess, Mr. Grey's money and property is belied both by Mr. Grey's contemporaneous claim and the statements of the government's own agent.  The burden is on the government

to overcome the ample evidence presented herein.  In the face of Mr. Grey's evidence, including Special Agent Logan's recorded admission, it cannot carry that burden.

For these, and the reasons further stated herein, Mr. Grey respectfully requests that the Court grant his motion for return of property pursuant to Federal Rule of Criminal Procedure 41(g), or set an evidentiary hearing.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. *Mr. Grey's Property*

Mr. Grey does not use banks and stores his life savings in his home, locked in a safe. (*See* Declaration of Franz Grey ("F. Grey Decl.") at ¶ 2.)  That safe is located in Mr. Grey's bedroom, inside a closet door, and is secured with a combination lock.  (*Id.*)

In May 2018, Mr. Grey had approximately $500,000.00 in cash stored in his safe. (Cohen Decl., Exhibits 14, 15.)  Cash was not Mr. Grey's sole means of saving for the future, however.  Mr. Grey believes that precious metals are an important, long-term investment, which will appreciate over time, and he regularly purchases them to maintain and promote his financial security.  (F. Grey Decl. at ¶ 3.)  Mr. Grey keeps his precious metals collection in his safe, and, in May 2018, Mr. Grey had gold and silver coins totaling approximately $13,200.00 in value, and assorted additional precious metals including palladium, worth approximately $80,000.00, stored therein.  (*Id.* at ¶¶ 6, 7; Declaration of Danielle Thompson at ¶ 5.)

In addition to his own savings, Mr. Grey stored his family's generational wealth, including precious family heirlooms, in his safe.  (F. Grey Decl at ¶ 5; Declaration of Rose Marie Grey at ¶ 3.)  These included a rare, gold Patek Philippe 18 KT skeleton pocket watch – passed down to him from his mother, and from her father before her – with an approximate value between $34,000.00 and $57,000.00, and a gold ring that had been in Mr. Grey's family since the Civil War.  (F. Grey Decl. at ¶ 5.)

As discussed below, Mr. Grey's entire life savings, and all his family heirlooms, were seized when the government executed a series of unlawful searches of his home.

MOTION FOR RETURN OF PROPERTY

### B. The First Unlawful Search

On May 1, 2018, the City of Lancaster applied for, and obtained, a warrant to inspect Mr. Grey's property for potential violations of the City's municipal code from the Los Angeles County Superior Court ("LASC").  (Dkt. 18-2 at Exhibit A.)  Two days later, on the morning of May 3, 2018, nine armed deputies of the Los Angeles County Sheriff's Department ("LASD") approached Mr. Grey's property under the guise of executing the administrative warrant.  (Dkt. 18 at 7.)  Prior to doing so, the deputies arrested and questioned Mr. Grey.  (*Id*., Exhibit C, E.)  Then, using his keys, they entered and searched his home.  (*Id*., Exhibit F.)

### C. The Second Unlawful Search

Later the same day, subsequent to the initial search, the LASD sought and obtained a criminal search warrant.  LASD deputies then re-entered Mr. Grey's home in the afternoon of May 3, 2018.  (*Id*., Exhibit C.)  Following this second search, federal law enforcement officials joined the investigation and took custody of the seized evidence.  According to the Complaint later filed against Mr. Grey, pursuant to the May 3rd search, officers seized approximately $239,699.00 in U.S. currency from his residence, among other property.  (Dkt. 1 at 6.)  Though absent from the Complaint, in a supplemental report of the May 3 incident, dated May 17, 2018, LASD stated that – in addition to the substantial sums of money taken from Mr. Grey's property – "yellow metal" jewelry and approximately 40 silver dollars of multiple vintages were seized.  (Cohen Decl. at ¶ 8, Exhibit 8.)

Additionally, in the video taken during the search of Mr. Grey's home, LASD deputies can be heard identifying "coins" found in Mr. Grey's safe, and the same is reflected in still frames and evidence photos attached hereto.  (Cohen Decl. at ¶ 8, Exhibits 13 (Evidence Video at 3:42), 14 (Still Frames), and 15 (Evidence Photos).)

### D. The Third Unlawful Search

A *third* search of Mr. Grey's property was conducted on May 31, 2018.  (Dkt. 1 at 9.)  Again, federal officials participated in the search.  (Dkt. 1 at 3.)  According to the Complaint, approximately $40,000.00 in U.S. currency was seized from Mr. Grey's home

at that time.  (Dkt. 1 at 10.)  However, per the Search Warrant Inventory, an "undetermined amount of currency" was seized.  (Cohen Decl. at ¶ 8, Exhibit 7.)

### D. The Charges Against Mr. Grey

Mr. Grey was subsequently charged with one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one count of possession of an unregistered firearm in violation of 21 U.S.C. § 5861(d).  (Dkt. 11.)  On July 23, 2018, Mr. Grey moved to suppress all physical evidence uncovered following the unlawful, initial search of his home conducted by LASD and the City of Lancaster on May 3, 2018.  (Dkt. 18.)  On September 13, 2018, this Court granted the motion to suppress, over the government's opposition, finding that the initial search was unreasonable and that all evidence seized thereafter was fruit of the poisonous tree.  (Dkts. 25, 53.)

The government appealed the decision to the Ninth Circuit, and, on May 27, 2020, the Ninth Circuit affirmed this Court's reasoned judgment.  (Dkts. 55, 89.)  Thereafter, on June 18, 2020, the government moved to dismiss the indictment, and this Court dismissed the indictment the same day.  (Dkts. 91, 93.)  Plainly, at this juncture, the government has no justification for retaining any money or property seized from Mr. Grey.

### E.  Mr. Grey's Claims for Return of His Property

Mr. Grey has maintained, throughout this case, that the government seized $500,000.00 in cash, precious metals, gold and silver coins, gold jewelry, and other items of value from him pursuant to its unlawful searches of his home.  (*See* F. Grey Decl. at ¶¶ 4-8.)  He has made diligent, concerted efforts to achieve his property's return.  On July 2, 2018, Mr. Grey filed a *pro se* motion for return of property in LA Superior Court, Case No. MA073946.  (Cohen Decl. ¶ 2 at Exhibit 1.)  Therein, Mr. Grey sought the return of various items of value taken from his residence, including $500,000.00 in cash, silver dollars, gold coins, and other precious metals.  (*Id.*, at 3.)  The motion was summarily denied.  (Cohen Decl. at ¶ 3, Exhibit 2.)

On July 18, 2019, pursuant to a subsequent request, this time directed to the FBI, the government returned a portion of the seized cash: $239,699.00.  (*Id.* at ¶ 5, Exhibit 4.)

Then, on August 27, 2019, the government returned an additional $42,415.00 in unlawfully seized funds.  (*Id.* at ¶ 7, Exhibit 6.)

Although the government has returned a portion of the money unlawfully seized from Mr. Grey, it has refused to acknowledge, let alone return, the balance of the $500,000.00 that remains outstanding, nor any of Mr. Grey's valuables, claiming that it has nothing more in its possession.  (Cohen Decl. at ¶ 12.)  The admissions of its own agent belie this contention.

Subsequent to returning approximately $270,000.00 to Mr. Grey, the case agent, FBI Special Agent Tony Logan, admitted that agents seized approximately $200,000-250,000.00 from Mr. Grey's house during their *first* search, and then seized an *additional* $200,000-300,000.00 during a subsequent search that occurred approximately two weeks later.  Speaking on the podcast entitled "Best Case Worst Case," Special Agent Logan discussed Mr. Grey case in detail.[1]  (Exhibits 9 (Podcast at 34:00) and 10 (Transcript at 2:12-14.)  He had a clear recollection of the case and provided numerous specifics about Mr. Grey, his history, his home, the charges against him, and the searches at issue.  Most pertinent here, he made the following statements:

- "Every time they, they hit his house the first time, he had like 200-250,000 dollars cash in his safe."  (Exhibits 9 (Podcast at 33:35) and 10 (Transcript at 2:8-10).)

- "And the second time, when I was there, they hit his house again, and this was only like two weeks later.  He had another 2 or 300,000 dollars of cash."  (Exhibits 9 (Podcast at 34:00) and 10 (Transcript at 2:12-14).)

---

[1] Curiously, the interview in which Special Agent Logan made his admissions regarding the seizure of additional funds from Mr. Grey, Episode 140, has been removed from the episode listing and is no longer available online.  (*See* Cohen Decl. at ¶ 9.)  By contrast, a second interview from October 11, 2019 (Episode No. 146), which also features Special Agent Logan on the Best Case Worst Case podcast but does not include a discussion of Mr. Grey's case remains available.  (*Id.*)  Mr. Grey is seeking as part of pre-hearing discovery all evidence of communications between Special Agent Logan and/or any government agent, official or employee and representatives of the podcast.

MOTION FOR RETURN OF PROPERTY

Upon learning of Special Agent Logan's admissions, which corroborate Mr. Grey's consistent claims regarding the amount of funds taken from his home, defense counsel contacted the FBI seeking the return of the outstanding funds.  (Cohen Decl. at ¶ 10, Exhibit 11.)  In an effort to meet and confer, defense counsel provided an overview of the facts and law supporting Mr. Grey's request.  (*Id.*)  Counsel for the FBI indicated that the government does not have Mr. Grey's money or property, and will not compensate Mr. Grey for his losses.  (*Id.* at ¶ 12.)  This Motion follows.

### III.   ARGUMENT

#### A. Legal Standards

"A person aggrieved … by the deprivation of property may move for the property's return."  Fed. R. Crim. P. 41(g).  The burden of proof for a Rule 41(g) motion depends on when the defendant files the motion.  "When a motion for return of property is made before an indictment is filed (but a criminal investigation is pending), the movant bears the burden of proving both that the [property's] seizure was illegal and that he or she is entitled to lawful possession of the property."  *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987) (citations omitted).  However, that burden of proof changes when "the property in question is no longer needed for evidentiary purposes, either because trial is complete, the defendant has pleaded guilty, or … the government has abandoned its investigation." *Id.*  At that time, the burden of proof shifts, and the defendant "is *presumed* to have a right to [the property's] return, and the *government has the burden* of demonstrating that it has a legitimate reason to retain the property."  *Id* (emphasis added); *see also United States v. Kriesel*, 720 F.3d 1137, 1144 (9th Cir. 2013) (explaining that a "defendant's Rule 41(g) motion should presumptively be granted if the government no longer needs the property for evidence.") (internal quotation marks and citation omitted).

"The government can rebut the presumption that property ought to be returned by proving a 'legitimate reason' for retaining the property that is 'reasonable [ ] under all of the circumstances.'"  *United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014) (quoting *Kriesel*, 720 F.3d at 1145); *see also United States v. Kaczynski*, 416 F.3d 971, 974

1  (9th Cir. 2005) ("[T]he government has the burden of showing that it has a legitimate

2  reason to retain the property.") (quotation marks omitted); *Ramsden v. United States*, 2

3  F.3d 322, 326 (9th Cir. 1993) (explaining that "reasonableness under all of the

4  circumstances must be the test when a person seeks to obtain the return of property.")

5  (internal quotation marks and citation omitted).

6      "The simplest way for the government to carry its burden is to prove 'the property ...

7  is contraband or subject to forfeiture.'" *Gladding*, 775 F.3d at 1152 (citation omitted); *see

8  *also United States v. Fitzen*, 80 F.3d 387, 389 (9th Cir. 1996) ("It is well-settled that the

9  federal government may defeat a Rule [41(g)] motion by demonstrating that the property is

10  subject to federal forfeiture."). "To that end, district courts 'must receive evidence on any

11  factual issue necessary to decide the motion.'" *Id.* (citing Fed. R. Crim. P. 41(g)).  "The

12  government can therefore carry its burden by submitting evidence that demonstrates the

13  property is contraband or the property falls within the court's forfeiture order." *Id.*

14      **B. The government has no legitimate reason for retaining Mr. Grey's**

15          **unlawfully-seized funds and valuable personal property, and must return**

16          **them to him forthwith.**

17      Here, the government cannot possibly establish a basis to retain the unlawfully-

18  seized funds and property.  It has moved to dismiss the case against Mr. Grey in the

19  interests of justice, and the case has been dismissed.  (Dkts. 91, 93.)  There is no ongoing

20  investigation or prosecution.  Nor has an order of criminal or civil forfeiture been imposed.

21      The sole question for this Court, therefore, is whether the government has (or had)

22  Mr. Grey's money and valuables – if it does, that property must be returned.

23      Mr. Grey's Motion and the accompanying evidence establishes his claim that the

24  government unlawfully seized $500,000.00 in cash, as well as gold jewelry (valued

25  between $34,000.00 and $57,000.00), 7 one-ounce gold coins (valued at $1,900.00 per

26  coin), 20 silver coins (valued at $660), and other precious metals worth nearly $80,000.00,

27  from him.  Ample, direct and circumstantial evidence corroborates his claims.  The

28  government's own incident report, and video of its unlawful search, confirm that gold and

silver coins, and gold jewelry, was seized from Mr. Grey's home on May 3, 2018.  (Cohen Decl., Exhibits 7 and 8.)  Special Agent Logan has, likewise, has admitted that agents seized approximately $500,000.00 from Mr. Grey's residence during the May 3 and May 31, 2018 searches.  (Cohen Decl. at ¶ 9.)  Mr. Grey has therefore established that he is entitled to the return of the money and property at issue in this Motion.

To the extent that the government now seeks to disavow its incident report, video footage of the search, and Special Agent Logan's admissions, this Court should not accept its representations.  *See Gladding*, 775 F.3d at 1153 (reversing district court's denial of defendant's Rule 41(g) motion where district court concluded that it was "satisfied" with the government's "representations" because "representations are not evidence, unless adopted by the opponent.").   Rather, to meet its burden, the government must adduce credible evidence demonstrating that it did not seize the $217,886.00 balance of Mr. Grey's funds, nor unlawfully take possession on his precious metals and valuables.  It must also show that Mr. Grey, his mother, his sister-in-law, Special Agent Logan, and other of its agents are not credible.  If it cannot do so, the Court must grant Mr. Grey's motion pursuant to Rule 41(g).

If (and only if) the government can come forward with admissible evidence sufficient to dispute Mr. Grey's evidence, the Court must hold an evidentiary hearing to decide this question.  *See* Fed. R. Crim. P. 41(g).

//
//
//
//
//
//
//
//
//

MOTION FOR RETURN OF PROPERTY

1

## IV.   CONCLUSION

2

For the foregoing reasons, Mr. Grey respectfully requests that the Court grant this

3

motion for the return of property, or set an evidentiary hearing forthwith.

4

5

Respectfully Submitted,

6

Dated:  December 23, 2020               **COHEN WILLIAMS LLP**

7

By:  */s/ Alyssa D. Bell*

8

Reuven L. Cohen

Alyssa D. Bell

9

Michael V Schafler

Attorneys for Defendant,

10

FRANZ GREY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

## <u>DECLARATION OF REUVEN L. COHEN</u>

I, Reuven L. Cohen, declare:

1.      I am over the age of eighteen and am an attorney duly licensed to practice law in the State of California.  I am a partner at Cohen Williams LLP and am retained counsel for Franz Grey.  I make this declaration in support of Mr. Grey's Motion for Return of Property.  This declaration is based upon my personal knowledge and based on the files and records in this case.  If called upon to testify as to the matters set forth in this declaration, I could and would do so.

2.      On July 2, 2018, Mr. Grey filed a pro se Motion for Return of Property in Los Angeles Superior Court, Case No. MA073946.  Attached hereto as Exhibit 1 is a true and correct copy of the motion.

3.      On July 19, 2018, the motion was denied, and on September 12, 2018, the Clerk gave notice that no further action would be taken on the motion.  Attached hereto as Exhibit 2 is a true and correct copy of the Order and Clerk's Notice.

4.      On February 26, 2019, I sent a forfeiture demand on behalf of Mr. Grey to the Federal Bureau of Investigation ("FBI") requesting the return of $239,699 in U.S. currency taken from his house on May 3, 2018.  Attached hereto as Exhibit 3 is a true and correct copy of the letter.

5.      On July 18, 2019, my paralegal met with FBI agents at Wells Fargo at which time the funds were returned.  Attached hereto as Exhibit 4 is a true and correct copy of the Property Receipt for the return of the $239,699 in U.S. currency.

6.      On August 21, 2019, I sent a forfeiture demand on behalf of Mr. Grey to the Federal Bureau of Investigation ("FBI") requesting the return of $40,000 in U.S. currency taken from his house on May 31, 2018.  Attached hereto as Exhibit 5 is a true and correct copy of the letter.

7.      On August 27, 2019, my paralegal met with FBI agents at Wells Fargo at which time $42,415 in seized funds were returned.  Attached hereto as Exhibit 6 is a true and correct copy of the Property Receipt for the return of the $42,415 in U.S. currency.

8.    I have reviewed the Search Warrant Inventory from the May 31, 2018 seizure provided as discovery in this case (Bates 00000717).  Per the Inventory, an undetermined amount of cash was seized. Attached hereto as Exhibit 7 is a true and correct copy of the Search Warrant Inventory.  Additionally, I have reviewed LASD's Supplemental Report of the May 3, 2018 seizure, which delineates the precious metal seized on that date, and evidence photos of the precious metals seized.  Attached hereto as Exhibit 8 is a true and correct copy of the Supplemental Report.  I have also reviewed LASD's evidence video of the seizure.  In the video, beginning at approximately minute 3:42, the deputies identify certain items found in Mr. Grey's safe as "coins."  A true and correct copy of the video will be concurrently submitted as Exhibit 13.  Still frame images of the video are attached hereto as Exhibit 14.  True and correct copies of LASD evidence photos of the same items are attached hereto as Exhibit 15.

9.    In November 2019, it came to my attention that an FBI agent had made statements regarding Mr. Grey's case and the seizures of currency from his house on the podcast Best Case Work Case.  The episode was recorded on or about August 30, 2020 and was 53 minutes and 59 seconds long.  Upon information and belief, it was the 140th episode of the Best Case Worst Case podcast.  At around the 33rd minute of the podcast, Special Agent Tony Logan begins his discussion of the seizures.  A copy of the original podcast from August 30, 2019 will be concurrently submitted as Exhibit 9.  A transcript of the relevant portions of the podcast is attached hereto as Exhibit 10.  On or about October 11, 2019, Best Case Worst Case released a new episode, Episode No. 146, wherein the hosts interview Special Agent Logan.  Episode 146 is 36 minutes long and does not contain a discussion of Mr. Grey's case.  I reviewed the Apple Podcasts page for Best Case Worst Case.  Episode 140 is no longer available.

10.   On December 4, 2019, I sent an email to Agents Hannah Monroe and Evan Guevarra of the FBI and Assistant United States Attorney Kevin Reidy regarding the additional currency seized from Mr. Grey as described in the Best Case Worst Case podcast

2

and requesting the return of the remaining funds.  I received no response from the government.  Attached hereto as Exhibit 11 is a true and correct copy of the email.

11.    On December 12, 2019, I sent a follow up email regarding the return of Mr. Grey's property.  I received no response from the government.  Attached hereto as Exhibit 12 is a true and correct copy of the email.

12.    In January 2020, I was informed that FBI Associate Division Counsel Anthony Montero stated that the FBI has no additional funds to return to Mr. Grey.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 23, 2020, at Los Angeles, California.

By: _____

Reuven L. Cohen

3

MOTION FOR RETURN OF PROPERTY

# EXHIBIT 1

RECEIVED

Superior Court of California
County of Los Angeles

JUL 02 2018

49

FRANZ GREY APPEARING IN PROPRIA PERSONA #24086-009
MDC  PO BOX 1500, LOS ANGELES,  CA  90053

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA **NORTH DISTRICT**
FOR THE COUNTY OF LOS ANGELES NORTH JUDICIAL
DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF<br>CA<br><br>V<br><br>FRANZ GREY | MOTION FOR RETURN OF SEIZED<br><br>PROPERTY<br>CASE # MA073946 |

RELIEF SOUGHT:

THE DEFENDANT FRANZ GREY, APPEARING IN PROPRIA PERSON A MOVES
THIS HONORABLE COURT FOR AN ORDER TO RETURN ALL PROPERTY FROM THE
SHERIFF's DEPARTMENT THAT WAS ILLEGALLY SEIZED AND THE DEFENDANT HAS
SINCE BEEN ACQUITTED OF ALL CHARGES THAT THE SHERIFF's DEPARTMENT FALSELY
ACCUSED THE DEFENDANT OF.

GROUNDS FOR RELIEF:

THE DEFENDANT, FRANZ GREY ASSERTS THAT HE IS THE LAWFUL OWNER
OF THE PROPERTY THAT IS LISTED IN THE SCHEDULE ATTACHED TO AND INCOR_
PORATED IN THIS MOTION AS EXHIBIT A1.  THIS PROPERTY WAS SEIZED FROM
THE DEFENDANT ON MAY 3rd, 2018 at 9:00 am.  THE SHERIFF'S DEPARTMENT
SUBSEQUENTLY WENT TO JUDGE CHUNG AT 4:00 pm later that day and falsified
an affidavit and deliberately misled Judge Chung AT  4:00 PM TRYING
TO MAKE A BAD SEARCH GOOD.    NEVERTHELSESS DEFENDANT HAS SINCE HADA A
FINAL ADJUDICATION RENDERING THE DEFENDANT CLEARED AND EXONERATED OF AL L
FALLSE CHARGES AND ACCUSATIONS AGAINST HIM.  THE SEARCH OF THESE PREMISES
AND THE SEIZURE OF THIS PROPERTY WAS UNLAWFUL BECAUSE THE DEPUTY SHERIFF'S
THREATENED TO SHOOT AND TO KILL THE DEFENDANTS REGISTEREED SERVICE
ANIMAL IF THE DEFENDANT REFUSED TO ALLOW THE DEPUTIES ENTRENCE TO THE
PROPERTY.    THE PROPERTY WAS SEIZED AGAINST THE DEFENDANTS WILL, WITHOUT
A SEARCH WARRANT, FROM HIS RESIDENCE WITH NO PRETENSE OF ANY I  EXIGENT
CIRCUMSTANC ES, WITHOUT BEING IN PLAIN VIEW, AND WITHOUT ANY PROBABLE
CAUSE TO BELIEVE THAT ANY CRIME WAS BEING OR HAD BEEN COMMITTED ON THE
DEFENDANTS RESIDANCE.

PAGE 1 OF 4

50

PURSUANT TO THE EXCLUSIONARY RULE ADOPTED BY THE COURTS OF THE
STATE OF CALIFORNIA AND THE SUPREME COURT OF THE UN ITED STATES AND
CALTHE    CALIFORNIA XNNXTNEXXNX  STATE CONSTITUTIO AND THE UNITED STATES
CONSTITUTION TO  TO PROTECT THE FOURTH AMENDMENT RIGHTS OF THE DEFENDANT
AND PERSONS SIMILARLY SITUATED, THE DEFENDANT IS ENTITLED TO HAVE THE
PROPERTY LISTED IN THE ATTACHED SCHEDULE RETURNED TO HIM WITHOUT DELAY
ACCORDING TO THE PROCEDURES ENUMARATED IN THE CALIFORNIA RULES OF
CRIMINAL PROCEDURE AND RULES OF COURT.

FURTHERMORE, BECAUSE THE DEFENDANT IS ENTITLED TO LAWFUL POSSESSION
OF THE PROPERTY LISTED IN THE SCHEDULE,, AND BECAUSE THE GOVERNMENT
HAS NO LEGITIMATE NEED FOR THIS PROPERTY ONCE ITS USE AS EVIDENCE
AGAINST THE DEFENDANT HAS BEREN COMPLETELY DISMISSED AND ACQUITTED
THE PROPERTY SHOULD BVE RETURNED TO THE DEFENDANT WITHOUT DELAY.

RESPECTFULLY SUBMITTED

FRANZ GREY    JUNE 21, 2018

Page 2 OF 4

51

EXHIBIT A1

## PROPERTY TO BE RETURNED IMMEDIATELY

1.      ALL U.S. CURRENCIES SEIZED.  APPROXIMATELY $500,000.00 US DOLLARS.

2.      ALL SILVER BOULION AND SILVER DOLLARS OVER 50 in TOTAL.

3.      ALL GOLD COINS APPROX  6 OUNCES.

4.      ALL RARE EARTH METAL COINS AND BARS SEIZED

5.      ALL COMPUTERS AND DIGITAL DEVICES THAT WERE ILLEGALLY SEIZED.

6.      ALL FIREARMS THAT WERE AND ARE PROTECTED UNDER THE SECOND AMENDMENT OF THE UNISTED STATES CONSTITUTION AND THE BILL OF RIGHTS DC V HELLER  US SUPREME COURT

7.      ALL AMMUNITION AND RELOADING SUPPLIES

*

8.      ALL PAPERS AND ARTIFACTS SEIZED THAT ARE PROTECTED UNDER THE UNITED STATES AND CALIFORNIA CON STITUTIONS.

10.      EVERYTHING THAT WAS ILLEGALLY SEIZED AND THE DEFENDANT WAS COMPLETELY ACQUITTED AND EX ONERATEED FOR INCLUDING BUTZ NOT LIMITED TO EVERYTHING SPECIFICALLY ITEMIZED IN THIS LIST AND THE POLICE AND SHERIFF'S INVENTORY.

Page 3 OF 4

52

ON THIS _____DAY OF_____ , 8XXX  2018

THE HONORABLE JUDGE_____, IN DIV._____

HEREBY GRANTS THIS  MOTION FOR  RETURN OF PROPERTY_____

_____

THE MONIES TO BE SENT BY CASHIERS CHECK TO  :  rose marie welch,

4342 W.  165xth  street, LAWNDALE  CA  90260.  in the amount of

$_____.

FURTHERMORE IT IS HEREBY ORDERED that any and all properties including

BUT NOT LIMITED TO EVERYTHING INCLUDED IN THE ATTACHED EXHIBIT A1 AS

WELL AS THE ENTIRE INVENTORY AS ITEMIZED BY THE LOS ANGELES COUNTY

SHERIFF"S DEPARTMENT.  TO BE DELIVERED BY _____UPS OR IN  TO ROSE WELCH

THE ALTERNATIVE TO ABOVE ADDRESS_____  THE COSTS TO BE BORNE

BY _____SHERIFF"S DEPT.      OR _____DEDUCTED FROM DEFENDANTS

$500,000.00 US CURRENCY.


THE HONORABLE JUDGE_____, IN DIV_____


_____

HEREBYY GRANTS THIS MOTION FOR RETURN OF PROPERTY ON THIS DAY _____

_____OF    2018

Page 4 of 4

# EXHIBIT 2

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

**JUL 19 2018**

SHERRI R CARTER, EXECUTIVE OFFICER/CLERK OF COURT

BY _____, DEPUTY
AMBER HAYES

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

People of the State of California )   No. MA073946
)
)
vs. )
)
)   **ORDER ON MOTION FOR**
FRANZ GREY, )   **RETURN OF PROPERTY**
Defendant )
_____ )

The court received the Motion for Return of Property in the above-entitled case on July 2,
2018. Petitioner claims that the property was illegally seized, and that he "has since been
acquitted of all charges."

To be clear, Petitioner was not, indeed, acquitted. The People announced unable to
proceed within the statutory time period for trial, so the defense motion to dismiss
pursuant to Penal Code section 1382 was granted.

The court notes that Petitioner currently is incarcerated, serving a sentence in case
number BA314171. The property seized during the service of the search warrant in case
MA073946 consists of narcotics, weapons, and ammunition. Penal Code section 1536
requires that any property taken during the service of a warrant be retained by law
enforcement, subject to court order. Because items seized during the service of a warrant
are often contraband, it is not common practice that they be released to the subject of the
warrant, even upon completion of the criminal proceedings. To release drugs and
firearms to a subject who is incarcerated would be absurd.

If Petitioner is seeking return of non-contraband, personal property, he must file a proper
motion, noticing the arresting agency and the D.A.'s Office, specifying what items he
seeks released back to him. He has not done so here. The court cannot act as Petitioner's
legal runner. Therefore, his requests for forms and information, as well as his request for
return of property, respectfully are **DENIED**.

Dated: July 19, 2018

Kathleen Blanchard
Judge of the Superior Court

A copy of this order is sent via US mail addressed as follows:
**FRANZ GREY, 24086-009**
**METROPOLITAN DETENTION CENTER, P.O. BOX 1500**
**LOS ANGELES, CA 90053**

**L.A. COUNTY DISTRICT ATTORNEY**
**42011 4th STREET**
**LANCASTER, CA 93534**



**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, NORTH JUDICIAL DISTRICT**

|  |  |  |
|---|---|---|
| People of the State of California | ) ) ) ) ) ) ) ) ) ) ) ) ) | **MA073946**<br><br>**Letter** |
| Grey, Franz | | |

    The court has reviewed petitioner's 2 page typewritten letter received 8/25/18 wherein he inquires of this court whether it 'possibly signed 3 separate search warrants.' This request is an ex parte request and is not the appropriate procedure to litigate any proposed motions. Review of the court file shows this case is no longer active. To the extent petitioner is alleging that the sheriff deputies signed and falsified their affidavits, this court notes there is no pending motion and this court can not act as an advocate with petitioner's request to be a witness on his behalf.

    Review of the recent minute orders show that a motion to return property and suppress evidence was received and forwarded to the bench officer in Department A-21. At this time, no further action will be taken by this court.

Clerk to give notice:

September 12, 2018

Lisa Chung, Department A-19
Los Angeles County Superior Court

1

# EXHIBIT 3

David Joseph Sutton
Tel: 213-232-5171
dsutton@cohen-williams.com

# COHEN WILLIAMS LLP

February 26, 2019

VIA Priority Mail

Forfeiture Paralegal Specialist
Federal Bureau of Investigation
11000 Wilshire Blvd.
Suite 1700, FOB
Los Angeles, CA 90024

*Re:* **$239,699 in U.S. Currency**

Dear Sir or Madam,

I represent Franz Grey ("Claimant"), who is the owner of the currency described above.  The U.S. currency was seized on or about on May 3, 2018, at 42957 38th Street West in Lancaster, California and Claimant claims ownership of the currency and hereby contests its seizure and forfeiture. By countersigning below, Claimant makes this claim under oath, subject to the penalty of perjury. Please direct all future correspondence or communication regarding this matter to me.

Sincerely,

David Joseph Sutton

By my signature below, I hereby state and declare that, I am the owner of the seized property described as $239,699 in U.S. Currency seized from various locations in at 42957 38th Street West in Lancaster, California and I contest the seizure and forfeiture of the currency.  Should the Federal Bureau of Investigation release my funds, please direct payment to Cohen Williams LLP.  I declare under penalty of perjury that the foregoing is true and correct.  Executed this February 26, 2019 at Los Angeles, California.

Franz Grey

cc:     Assistant United States Attorney Kevin Reidy, Special Agent Hannah Monroe

# EXHIBIT 4

FD-597 (Rev. 4-13-2015)                                                                          Page _____ of _____

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property

Case ID: 266S - LA - 287535/

On (date) July 18, 2019          item (s) listed below were:
                                    ☐ Collected/Seized
                                    ☐ Received From
                                    ☐ Returned To
                                    ☒ Released To

(Name) Rebecca Lessler, Cohen-Williams LLC

(Street Address) _____

(City) _____

Description of Item (s): _____

1080: $70,616.00 USD

1081: $61,568.00 USD

1082: $87,515.00 USD

Received By: _____          Received From: _____
                  (Signature)                                    (Signature)

Printed Name/Title: _____          Printed Name/Title: Evan Guevara TFO

# EXHIBIT 5

Reuven L. Cohen
Tel: 213-232-5163
rcohen@cohen-williams.com

# COHEN WILLIAMS LLP

8/21/2019

VIA Priority Mail

Forfeiture Paralegal Specialist
Federal Bureau of Investigation
11000 Wilshire Blvd.
Suite 1700, FOB
Los Angeles, CA 90024

*Re:* **$40,000 in U.S. Currency**

Dear Sir or Madam,

I represent Franz Grey ("Claimant"), who is the owner of the currency described above.  The U.S. currency was seized on or about on May 31, 2018, at 42957 38th Street West in Lancaster, California and Claimant claims ownership of the currency and hereby contests its seizure and forfeiture. By countersigning below, Claimant makes this claim under oath, subject to the penalty of perjury. Please direct all future correspondence or communication regarding this matter to me.

Sincerely,

Reuven L. Cohen

By my signature below, I hereby state and declare that, I am the owner of the seized property described as $40,000 in U.S. Currency seized from various locations in at 42957 38th Street West in Lancaster, California and I contest the seizure and forfeiture of the currency.  Should the Federal Bureau of Investigation release my funds, please direct payment to Cohen Williams LLP.  I declare under penalty of perjury that the foregoing is true and correct.  Executed this August 15, 2019 at Los Angeles, California.

Franz Grey

cc:     Assistant United States Attorney Kevin Reidy, Special Agent Hannah Monroe

724 South Spring Street, 9th Floor
Tel: 213-232-5160
Los Angeles, CA 90014
Fax: 213-232-5167

www.cohen-williams.com

# EXHIBIT 6

FD-597 (Rev. 4-13-2015)                                                                Page _____ of _____

## UNITED STATES DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property

Case ID: _266 S-LA-287555 1_

On (date) _9/27/2019_                item (s) listed below were:
☐ Collected/Seized
☐ Received From
☐ Returned To
☒ Released To

(Name) _Robert Lewis_

(Street Address) _Well Fargo  333  ... / LA CA 10005_

(City) _Los Angeles  CA  90013_

Description of Item (s): _____

_1B74 - $42,415 00 USD_

Received By: _____          Received From: _____
              (Signature)                                  (Signature)

Printed Name/Title: _____   Printed Name/Title: _Evan Guerrero TFO_

# EXHIBIT 7

Page ___ of ___ of Incident Report

COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT EVIDENCE AND PROPERTY PAGE

Lancaster Station
URN FILE#: 918-10691-1192-117

Page 1 of 5 of Listed Evidence

EV = Evidence    F = Found    F250 = Found greater than $250    S = Surrendered    K = Safekeeping    P = Inmate Property

| CAT | ITEM # | CSI # | QUAN | DESCRIPTION | VALUE | BOOKED BY | BOOKING DATE | BARCODE # |
|-----|--------|-------|------|-------------|-------|-----------|--------------|-----------|
| EV | 1 | | 1 | Ammunition/Ammunition Components - CSI - two 12g shotgun shells | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 2 | | 1 | Firearm - a grey Zip Gun<br><br>Firearm Rendered Safe: Yes<br>Category: All Others - NA<br>Make: Unknown<br>Model: Not Applicable<br>Firearm Serial Number: Not Available<br>Caliber Family: 12<br>Magazine Present: No<br>Submitted Ammo Qty (#): None<br>Booked At: PATROL STATION | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 3 | | 1 | Phones/Cell - black ZTE cell phone<br><br>Article: Cell Phone<br>Make: ZTE<br>Model: Z836BL<br>Serial Number: 320474735460<br>Booked At: PATROL STATION | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 4 | | 1 | Cameras: Equip & Access - A manila envelope containing four security cameras<br>Article: CAMERA<br>Make: cobra<br>Model: night owl<br>Serial Number: Unknown | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 5 | | 1 | Lab Receipt#: L052920<br>Narcotics - bag containing blue/yellow substance suspected to be ecstasy<br>Drug Type: Suspected MDMA (Ecstasy) | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 6 | | 1 | Lab Receipt#: L052918<br>Narcotics - two plastic bags containing white crystal like substance resembling methamphetamine.<br>Drug Type: Suspected Methamphetamine | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 7 | | 1 | Lab Receipt#: L052919<br>Marijuana - eight bags containing marijuana<br>Drug Type Marijuana: Suspected Marijuana (S.<br>Booked At: PATROL STATION | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 8 | | 1 | Paraphernalia - paper bag containing five cans of butane gas | | ARMANDO LOPEZ # | 05/31/2018 | |

GREY_00000713

COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT EVIDENCE AND PROPERTY PAGE

Lancaster Station
URN FILE#: 918-10691-1192-117

Page 2 of 5 of Listed Evidence

EV = Evidence   F = Found   F250 = Found greater than $250   S = Surrendered   K = Safekeeping   P = Inmate Property

| CAT | ITEM # | CSI # | QUAN | DESCRIPTION | VALUE | BOOKED BY | BOOKING DATE | BARCODE # |
|---|---|---|---|---|---|---|---|---|
| EV | 9 | | 1 | Bulk Ammunition - a paper bag containing bulk ammunition. | | ARMANDO LOPEZ #602458 | 05/31/2018 | |
| EV | 10 | | 1 | Computers, equipment, & accessories - black Toshiba laptop<br>Article: LAP TOP COMPUTER<br>Make: Toshiba<br>Model: Unknown<br>Serial Number: 69588042Q<br>Booked At: PATROL STATION | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 11 | | 1 | Computers, equipment, & accessories - A BLACK HP COMPUTER<br>Article: COMPUTER (CPU)<br>Make: HP<br>Model: PAVILLION<br>Serial Number: CNV74114VR<br>Booked At: PATROL STATION | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 12 | | 1 | Checks, Credit Cards, Gift Cert. - A MANILA ENVELOPE CONTAINING ONE BANK OF AMERICA CHECK WRITTEN TO FRANZ GREY<br>Article: CHECKS (PERSONAL/BUSINESS)<br>Make: BANK OF AMERICA<br>Model: Unknown<br>Serial Number: 676<br>Face Value: $200.00 | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 13 | | 1 | Documents - MISC. PAPER WORK BELONGING TO DIAZ OCTAVIO MH/121389<br>Article: Other<br>Make: Unknown<br>Model: Unknown<br>Serial Number: Unknown | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 14 | | 1 | Checks, Credit Cards, Gift Cert. - PARTIALLY BURNED USSA CHECKS IN THE NAME OF DEXTER GREY<br>Article: CHECKS (PERSONAL/BUSINESS)<br>Make: USSA<br>Model: Unknown<br>Serial Number: Unknown<br>Face Value: Unknown | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 15 | | 1 | Checks, Credit Cards, Gift Cert. - SIX CREDIT CARDS IN THE SUSPECT'S NAME | | ARMANDO LOPEZ # | 05/31/2018 | |

Page ___ of ___ of Incident Report

COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT EVIDENCE AND PROPERTY PAGE

Lancaster Station
URN FILE#: 918-10691-1192-117

Page 3 of 5 of Listed Evidence

EV = Evidence   F = Found   F250 = Found greater than $250   S = Surrendered   K = Safekeeping   P = Inmate Property

| CAT | ITEM # | CSI # | QUAN | DESCRIPTION | VALUE | BOOKED BY | BOOKING DATE | BARCODE # |
|-----|--------|-------|------|-------------|-------|-----------|--------------|-----------|
|     |        |       |      | Article: CREDIT CARD<br>Make: Unknown<br>Model: Unknown<br>Serial Number: Unknown<br>Face Value: Unknown |  |  |  |  |
| EV | 16 |  | 1 | Identification Items - A FAKE CALIFORNIA DRIVERS LICENSE WITH THE NAME OF ROBERT LOYD FW/121483 WITH THE PHOTOGRAPH OF THE SUSPECT.<br>Article: LICENSE, DRIVER<br>Serial Number: C4423241 |  | ARMANDO LOPEZ | 05/31/2018 |  |
| EV | 17 |  | 1 | Identification Items - CALIFORNIA DRIVERS LICENSE BELONGING TO GUSTAVO GARCIA TORIBIO MH/062875<br>Article: LICENSE, DRIVER<br>Serial Number: D6406706 |  | ARMANDO LOPEZ # | 05/31/2018 |  |
| EV | 18 |  | 1 | Checks, Credit Cards, Gift Cert. - DISCOVER CREDIT CARD BELONGING TO BARRY THOMPSON<br>Article: CREDIT CARD<br>Make: DISCOVER<br>Model: Unknown<br>Serial Number: 6011950002480796<br>Face Value: Unknown |  | ARMANDO LOPEZ | 05/31/2018 |  |
| EV | 19 |  | 1 | Checks, Credit Cards, Gift Cert. - DISCOVER CREDIT CARD BELONGING TO ROSE M WELCH<br>Article: CREDIT CARD<br>Make: DISCOVER<br>Model: Unknown<br>Serial Number: 6011000704832538<br>Face Value: Unknown |  | ARMANDO LOPEZ # | 05/31/2018 |  |
| EV | 20 |  | 1 | Documents - CALIFORNIA DMV REGISTRATION CARD<br>Article: VEHICLE REGISTRATION<br>Make: DMV<br>Model: Unknown<br>Serial Number: 5FLH556 |  | ARMANDO LOPEZ # | 05/31/2018 |  |
| EV | 21 |  | 1 | Phones/Cell - BLACK SAMSUNG MODEL R910<br>Article: Cell Phone<br>Make: SAMSUNG |  | ARMANDO LOPEZ | 05/31/2018 |  |

GREY_00000715

Page ___ of ___ of Incident Report

COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT EVIDENCE AND PROPERTY PAGE

Lancaster Station
URN FILE#: 918-10691-1192-117

Page 4 of 5 of Listed Evidence

EV = Evidence   F = Found   F250 = Found greater than $250   S = Surrendered   K = Safekeeping   P = Inmate Property

| CAT | ITEM # | CSI # | QUAN | DESCRIPTION | VALUE | BOOKED BY | BOOKING DATE | BARCODE # |
|---|---|---|---|---|---|---|---|---|
| | | | | Model: R910 Serial Number: 99000024532622 Booked At: PATROL STATION | | | | |
| EV | 22 | | 1 | Phones/Cell - WHITE SAMSUNG MODEL G360 Article: Cell Phone Make: SAMSUNG Model: G360 Serial Number: A3LSMG360T Booked At: PATROL STATION | | ARMANDO LOPEZ | 05/31/2018 | |
| EV | 23 | | 1 | Phones/Cell - WHITE SAMSUNG MODEL N900 Article: Cell Phone Make: SAMSUNG Model: N900 Serial Number: R38F800SP4R Booked At: PATROL STATION | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 24 | | 1 | Phones/Cell - WHITE SAMSUNG MODEL N900 Article: Cell Phone Make: SAMSUNG Model: N900 Serial Number: R38FB182JTN Booked At: PATROL STATION | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 25 | | 1 | Phones/Cell - BLACK SAMSUNG MODEL D710 Article: Cell Phone Make: SAMSUNG Model: D710 Serial Number: 268435460712211219 Booked At: PATROL STATION | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 26 | | 1 | Phones/Cell - BLACK LG PHONE MODEL VM670 Article: Cell Phone Make: LG Model: VM670 Serial Number: 12KPBF0985101 Booked At: PATROL STATION | | ARMANDO LOPEZ # | 05/31/2018 | |
| EV | 27 | | 1 | Computers, equipment, & accessories - WESTERN DIGITAL HARD DRIVE Article: Other Make: WESTER DIGITAL | | ARMANDO LOPEZ # | 05/31/2018 | |

Page ___ of ___ of Incident Report

## COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT EVIDENCE AND PROPERTY PAGE

Lancaster Station
URN FILE#: 918-10691-1192-117

Page 5 of 5 of Listed Evidence

EV = Evidence   F = Found   F250 = Found greater than $250   S = Surrendered   K = Safekeeping   P = Inmate Property

| CAT | ITEM # | CSI # | QUAN | DESCRIPTION | VALUE | BOOKED BY | BOOKING DATE | BARCODE # |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  | Model: Unknown<br>Serial Number: WXA1A51E1351<br>Booked At: PATROL STATION |  |  |  |  |
| EV | 28 |  | 1 | Computers, equipment, & accessories -<br>HGST HARD DRIVE<br>Article: EXTERNAL DRIVES (HARD DRIVE, U<br>Make: HGST<br>Model: Unknown<br>Serial Number: 131211JA100010SE6JP<br>Booked At: PATROL STATION |  | ARMANDO<br>LOPEZ<br># | 05/31/2018 |  |
| EV | 29 |  | 1 | Computers, equipment, & accessories -<br>THREE USB FLASHDRIVES<br>Article: EXTERNAL DRIVES (HARD DRIVE, U<br>Make: Unknown<br>Model: Unknown<br>Serial Number: Unknown<br>Booked At: PATROL STATION |  | ARMANDO<br>LOPEZ | 05/31/2018 |  |
| EV | 30 |  | 1 | Seized Currency - UNDETERMINED<br>AMOUNT OF US CURRENCY |  | ARMANDO<br>LOPEZ | 05/31/2018 |  |

# EXHIBIT 8

COUNTY OF LOS ANGELES
SHERIFF'S DEPARTMENT

## SUPPLEMENTAL REPORT

| DATE: | 05/17/18 | FILE: | 936-06541-3382-153 | ACTION: Additional Information |
|---|---|---|---|---|
| C: | Possession of a Controlled Substance with a loaded Firearm 11370.1HS/F/153 | | | |
| S: | Grey, Franz, MW-10/20/65 | | | |

### NARRATIVE

The purpose of this supplemental report is to provide additional information regarding the above file number.

On 05/17/18, I took possession of the following items from Detective J. Caloca #442432:

1. Yellow Metal Watch
2. Yellow Metal Chain with Pendant
3. Yellow Metal Ring
4. Plastic container containing twenty (20) 2014 Silver Dollars
5. Plastic container containing twenty (20) 2006 Silver Dollars

The items were found by Detective Caloca amongst a large amount of U.S. Currency which was seized. I transported the items to Lancaster Station and booked them into the Watch Commander's safe under "safe keeping".

Lieutenant F. Jones #471929 approved the transfer.

| | | DATE: | TIME: |
|---|---|---|---|
| BY: | Deputy A. Chappell #527462 | 05/17/18 | 1622 |
| APPROVED: | Sgt. D. Wolanski #279499 | 05/17/18 | 1630 |
| ASSIGNED: | | | |
| SECRETARY: | | | |

SH-R-77 (RED TIP) REVISION 08/17

# EXHIBIT 9

# INTENTIONALLY BLANK

# EXHIBIT 10

**Best Case Worst Case Podcast Transcript**

<u>32:00</u>

| | |
|---|---|
| Agent: | The thing about this guy which was the most fascinating to me was, he had killed like 2, 3, or 4 people prior to this point and was living in Lancaster, just free. And never did any like serious jail time. He made his way from Pennsylvania out to California and was living. So, and it was all in weird ways. So the first person he had killed, he was upset at a party when he was younger. I think the guy's maybe in his 50s now. But he was like maybe in his 20s, he was upset at a party. He leaves, comes back, shoots randomly into the house, kills some random girl at the party. And didn't do like any significant time for it. |
| Host (Male): | Why? |
| Host (Female): | What? |
| Agent: | I have no idea. It was like in the 80s. And I was looking at it, so that was surprising. |
| Host (Male): | But he killed people after that too? |
| Agent: | Right. So then the next person he killed, I think he like either sicked his dog or something.  But he got someone like mauled to death essentially.  With his dog. |
| Host (Female): | Jim, this is bizarre. |
| Agent: | Very bizarre. That's what I'm saying. I'm reading this, I'm like how is this real life. So, and then the third person, I don't remember what happened with the third person. But it was something super bizarre as well. But yeah, he just did like some little bit of time like a year, two or four, whatever. And then he was just, that was it. Then he was living in Lancaster. |
| Host (Male): | Multiple. |
| Host (Female): | What a travesty. |
| Host (Male): | Multiple murders. |
| Agent: | Yeah. |
| Host (Male): | And he's doing a year or two. |
| Agent: | Yeah. |

1

| | | |
|---|---|---|
| 1 | Host (Male): | Okay. |
| 2 | Agent: | And that's when I asked my partner. |
| 3 | Host (Male): | And living large in Lancaster. |
| 4 | Agent: | Living large in Lancaster. |
| 5 | Host (Female): | Behind barbwire. |
| 6 | Agent: | Riding around. I mean they hit it, when they did the original warrant on his house. |
| 7 | | Just to show you how, just again, how bizarre these people are. Because I don't |
| 8 | | remember if he was selling drugs. I don't think he was selling drugs. Every time |
| 9 | | they, they hit his house the first time, he had like 200-250,000 dollars cash in his |
| 10 | | safe. So, of course we take it cause we're like this guy doesn't have a job. He had all |
| 11 | | these crazy like CTT, you know surveillances set up in his house. And all these |
| 12 | | weird guns he was trying to create, so we took all the stuff. And the second time, |
| 13 | | when I was there, they hit his house again, and this was only like two weeks later. |
| 14 | | He had another 2 or 300,000 dollars of cash. |
| 15 | Host (Male): | What? |
| 16 | Agent: | We are like where is this guy getting money from. He has no money in his bank |
| 17 | | accounts. |
| 18 | Host (Male): | Maybe he's printing it. |
| 19 | Agent: | No, it was real money. Both times when they went there. He just had large amounts |
| 20 | | of cash. And umm… |
| 21 | Host (Male): | And no banks, right? |
| 22 | Agent: | No banks. |
| 23 | Host (Male): | You don't use banks, right? |
| 24 | Agent: | Don't believe in the banks, so that's why they keep all their cash. |
| 25 | Host (Female): | So here's what is interesting to me, because Jim, I'm a trained prosecutor. |
| 26 | Host (Male): | Oh, well. |
| 27 | Host (Female): | I noticed that earlier you said you were assigned to the counter terrorism domestic |
| 28 | | terrorism squad. And my gun antenna went up when you said it looked like he was |

| | | |
|---|---|---|
| 1 | | making guns. So was that the hook in, the federal jurisdictional hook in or how did |
| 2 | | you guys get in involved? Why were you involved in this? |
| 3 | Agent: | Well he was…yeah the guns was, was one of the big factors why we got involved. |
| 4 | | Because he had a lot of guns and then he was also making them. So it wasn't only |
| 5 | | that he was making them. He already had like actual shotguns and like military style |
| 6 | | weapons at his house. He was threatening his neighbor and saying that there's laser |
| 7 | | beams coming down onto his house. And the government…. a lot of that type stuff |
| 8 | | so you know he was saying that people were out to get him and he was preparing for |
| 9 | Host (Male): | You know, I was in the FBI for 22 years. You haven't been in for quite that long, |
| 10 | | but you're in the FBI. Have you ever met anybody who was on the laser beam |
| 11 | | squad? |
| 12 | Agent: | You know, I haven't met anyone who was on the laser beam squad yet. I heard it |
| 13 | | was a private thing. |
| 14 | Host (Male): | Oh yeah. Cause I haven't met anybody on the laser beam squad or the x files squad. |
| 15 | | And I was just hoping that maybe you might have run into them because I never did |
| 16 | | in my entire in 22 years with the FBI. |
| 17 | Agent: | No, not, not at all. |
| 18 | Host (Male): | But apparently, we have some pretty high-tech equipment, right? Shooting laser |
| 19 | | beams at this guy. |
| 20 | Agent: | Yeah. |
| 21 | Host (Male): | You know. |
| 22 | Agent: | I had to sit in the car with this guy for two hours. We were taking him from |
| 23 | | Lancaster to like Men's Central, something downtown, and like to the federal. It |
| 24 | | was bad. The whole time he was just talking about how much he could help us. |
| 25 | | How, you know, the government, they had been shooting laser beams into his phone |
| 26 | | and that's why the stuff in his house is melted. He had a whole bunch of tools and |
| 27 | | stuff from the guns he had been making or trying to make in his house. He was like, |
| 28 | | |

3

yeah that's why they are melted because the government was coming in and they were doing all this stuff. It was bizarre. Very bizarre.

Host (Male):    When I was a first office agent in New York, I was on the bank robbery joint task force with NYPD. And… So we also did, we were the violent task squad and we also did threats and terrorism cases at the time, domestic stuff. But it was much more low scale. But it was much more low key, low scale.  And we would get, I remember one case was threats against the pope and Rudy Guiliani. And we would get, we call them short of the tin foil hat people, who think they are getting the rays from the outside and they are controlling. And this one woman had taken cans of paint, black paint, and just splashed it over her entire interior of her apartment. Everything including the bathroom, mirrors, and windows. And she has one piece of furniture, which was a couch with the legs cut off, so sitting on the floor. And it was, it was sad. And then, I remember another woman who had her entire apartment was filled with newspaper, but she had made paths. So there were literally like walls of newspaper on either side and there was a path from the front door to the kitchen to the living room and to the bedroom, but there was no place to sit anywhere because it was all covered in newspaper. But there are people who are tortured by these thoughts and ideas. And people who literally line their walls with aluminum foil and do all sorts of things because they believe the government is doing this. But, I also think that some of these sovereign citizens are doing it just to try to avoid paying taxes and just because they don't trust the government. And they are not actually driven by delusions or other things.

# EXHIBIT 11

Cohen Williams LLP Mail - Franz Grey

**Rebecca Lessler <rlessler@cohen-williams.com>**

---

## COHEN WILLIAMS LLP

---

# Franz Grey

**Reuven Cohen** <rcohen@cohen-williams.com>                                   Wed, Dec 4, 2019 at 3:20 PM
To: "Monroe, Hannah (LA) (FBI)" <hmmonroe@fbi.gov>
Cc: "Guevarra, Evan (LA) (OGA)" <eguevarra@fbi.gov>, Marc Williams <mwilliams@cohen-williams.com>, Rebecca Lessler
<rlessler@cohen-williams.com>, "Reidy, Kevin (USACAC)" <Kevin.Reidy@usdoj.gov>, Alyssa Bell <abell@cohen-
williams.com>

     Agent Monroe, hi. I hope that you've been well and had a nice Thanksgiving.

     It came to my attention recently that the FBI is, or may be, in possession of additional funds that belong to my client Franz
     Grey, and that should be returned to him.

     I don't know if you've listened to it, but Special Agent Tony Logan gave an interview to the podcast Best Case Worst Case
     wherein he described Mr. Grey's case in detail. Special Agent Logan explained that the FBI first raided Grey's house and
     seized $200 - $250,000, and, about two weeks later, raided again and seized another $250 - $300,000. Special Agent
     Logan made those statements around the 34th minute of the podcast, if you've listened to it.

     To date, our firm has taken possession of $281,699.00 on Mr. Grey's behalf. Mr. Grey has consistently maintained that the
     FBI seized more than that, and Special Agent Logan has now confirmed as much.

     Kindly let me know what our next steps are to get the remaining funds returned to our client.  Previously, the FBI has
     required us to formally ask for funds before returning the funds. If this request is not formal enough, just let us know what
     is required.
     Many thanks.

     Reuven L. Cohen
     Cohen Williams LLP
     724 South Spring Street, 9th Floor
     Los Angeles, CA 90014
     Tel:  213-232-5163
     Fax:  213-232-5167
     rcohen@cohen-williams.com
     www.cohen-williams.com


     On Sat, Aug 24, 2019 at 4:36 PM Monroe, Hannah (LA) (FBI) <hmmonroe@fbi.gov> wrote:
     [Quoted text hidden]

# EXHIBIT 12



**Rebecca Lessler <rlessler@cohen-williams.com>**

---

# Franz Grey

---

**Reuven Cohen** <rcohen@cohen-williams.com>                                      Fri, Dec 13, 2019 at 10:00 AM
To: "Monroe, Hannah (LA) (FBI)" <hmmonroe@fbi.gov>
Cc: "Guevarra, Evan (LA) (OGA)" <eguevarra@fbi.gov>, Marc Williams <mwilliams@cohen-williams.com>, Rebecca Lessler
<rlessler@cohen-williams.com>, "Reidy, Kevin (USACAC)" <Kevin.Reidy@usdoj.gov>, Alyssa Bell <abell@cohen-
williams.com>

   Hi, everyone.  I'm just circling back on this issue.  Thanks in advance.

   Reuven L. Cohen
   Cohen Williams LLP
   724 South Spring Street, 9th Floor
   Los Angeles, CA 90014
   Tel:  213-232-5163
   Fax:  213-232-5167
   rcohen@cohen-williams.com
   www.cohen-williams.com

   [Quoted text hidden]

# EXHIBIT 13

# INTENTIONALLY BLANK

# EXHIBIT 14





03/05/2018
16:15:33

03/05/2018
16:15:37

# EXHIBIT 15



