TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
KEVIN B. REIDY (Cal. Bar No. 320583)
Assistant United States Attorney
Violent and Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8536
     Facsimile: (213) 894-0141
     E-mail:    kevin.reidy@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 18-00412-CAS |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RETURN OF PROPERTY |
| v. | |
| FRANZ GREY, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Kevin B. Reidy, hereby files its Opposition to Defendant Franz Grey's Motion for Return of Property (Dkt. 96).

//

//

//

1

1        This opposition is based on the attached memorandum of points

2   and authorities, the files and records in this case, and such

3   further evidence and argument as the Court may permit.

4   Dated: March 12, 2021              Respectfully submitted,

5                                      TRACY L. WILKISON
                                       Acting United States Attorney
6
                                       BRANDON D. FOX
7                                      Assistant United States Attorney
                                       Chief, Criminal Division
8

9                                      ____/s/_____
                                       KEVIN B. REIDY
10                                     Assistant United States Attorney

11                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.    INTRODUCTION................................................... 1

II.   FACTUAL BACKGROUND............................................. 1

III.  ARGUMENT...................................................... 5

      A.   Legal Standard.......................................... 5

      B.   Defendant's Motion Should Be Denied
           Because the Government Does Not Have
           the Property He Seeks................................... 5

      C.   Special Agent Logan's Statements Do Not
           Raise a Genuine Factual Issue.......................... 10

      D.   Defendant's Statements Do Not Raise
           a Genuine Factual Issue................................ 12

      E.   Statements from Defendant's Family Members
           Do Not Raise a Genuine Factual Issue................... 15

      F.   An Evidentiary Hearing Is Not Necessary................ 15

IV.   CONCLUSION................................................... 17

## TABLE OF AUTHORITIES

**Cases**

Am. Home Assur. Co. v. Am. President Lines, Ltd.,

  44 F.3d 774 (9th Cir. 1994) ....................................13

United States v. Check No. 25128 in Amount of $58,654.11,

  122 F.3d 1263 (9th Cir. 1997) .................................13

F.T.C. v. Stefanchik,

  559 F.3d 924 (9th Cir. 2009) ...................................5

Hexcel Corp v. Ineos Polymers, Inc.,

  681 F.3d 1055 (9th Cir. 2012) .............................12, 15

Korkosz v. Clark County,

  379 F. App'x 593 (9th Cir. 2010) .............................15

Radobenko v. Automated Equipment Corp.,

  520 F.2d 540 (9th Cir. 1975) ..................................13

Soremekun v. Thrifty Payless, Inc.,

  509 F.3d 978 (9th Cir. 2007) ...................................5

Stevens v. United States,

  530 F.3d 502 (7th Cir. 2008) ..................................16

Triton Energy Corp. v. Square D Co.,

  68 F.3d 1216 (9th Cir. 1995) ...................................5

United States v. Albinson,

  365 F.3d 278 (3d Cir. 2004) ...................................16

United States v. Havens,

  446 U.S. 620 (1980) ...........................................14

United States v. Huffhines,

  986 F.2d 306 (9th Cir. 1993) ...............................6, 7, 8

United States v. Ibrahim,

  522 F.3d 1003 (9th Cir. 2008) ..............................5, 12

<u>United States v. Marshall</u>,

 338 F.3d 990 (9th Cir. 2003) ................................6, 8, 9

<u>United States v. Omondi</u>,

 369 F. App'x 487 (4th Cir. 2010) ...............................16

<u>United States v. One 1979 Porsche Coupe, Vin 9289200514</u>,

 709 F.2d 1424 (11th Cir. 1983) .................................14

<u>United States v. Solis</u>,

 108 F.3d 722 (7th Cir. 1997) ....................................6

<u>United States v. Stevens</u>,

 500 F.3d 625 (7th Cir. 2007) ...................................16

<u>United States v. White</u>,

 718 F.2d 260 (8th Cir. 1983) ....................................7

**<u>Statutes</u>**

California Penal Code § 148.9....................................8

**<u>Rules</u>**

Federal Rule of Civil Procedure 56(c)............................5

Federal Rule of Civil Procedure 56(d)...........................12

Federal Rule of Criminal Procedure 41(g).......................1, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Defendant asks this Court, pursuant to Federal Rule of Criminal Procedure 41(g), to order the government to turn over U.S. currency, gold coins, silver dollars, precious metals, and jewelry.  But undisputed evidence shows that none of the property defendant seeks is in FBI custody.  Much of defendant's property (including his coins and jewelry) is within the custody of the Los Angeles County Sheriff's Department.  Because these items were seized by local authorities in connection with their own investigation, Ninth Circuit case law holds that they are not recoverable from the federal government under Rule 41(g).  Neither statements from FBI Special Agent Tony Logan, nor defendant's own statements, nor statements from defendant's family create a genuine issue of fact as to whether the federal government has seized any other property from defendant that has not yet been returned.  Because the factual record is undisputed on this key point, an evidentiary hearing is unnecessary.  Defendant's motion should be denied.

### II.  FACTUAL BACKGROUND

On May 3, 2018, Los Angeles County Sheriff's Department ("LASD") deputies assisted in a home inspection and later executed a search warrant at defendant's residence.  (Order Granting Motion to Suppress, Dkt. 53, at 8-10.)  The FBI neither directed nor participated in the May 3, 2018 search.  (Id. at 4, 6, 8-10; see also Declaration of Hannah M. Monroe, attached as Ex. 1, ¶ 2.)  Sometime after May 3, 2018, LASD reached out to FBI about the possibility of investigating and prosecuting defendant for federal offenses.  (Ex. 1 ¶ 3.)  At this time, LASD was continuing to

1

investigate defendant for violating various state statutes. (Id. ¶¶ 3-4.)

On May 30, 2018, LASD obtained a state search warrant for defendant's residence related to its separate investigation. (Id. ¶ 4, Ex. A.)  Specifically, LASD sought permission to search defendant's home and person for electronic devices, evidence of identity theft (including equipment used to make credit cards or checks), and a 2006 Yamaha Jet Ski that had been reported stolen. (Id.)  The FBI did not direct LASD to draft and file this search warrant or to search defendant's home.  (Id. ¶ 5.)

On May 31, 2018, at LASD's request, FBI agents and other federal officers worked "in coordination with" LASD on its search of defendant's home.  (Id. ¶ 7; Ex. B.)  While FBI agents were present during this search, LASD Deputies were the only law enforcement officers handling the seizure and collection of evidence on May 31, 2018.  (Id. ¶ 5.)  The FBI did not seize, collect, or count any United States currency, gold coins, silver dollars, precious metals, jewelry, or any other items on May 31, 2018.  (Id.)

Once the decision was made to pursue federal weapons charges against defendant, the FBI took a number of items from LASD custody into FBI custody in June 2018.  (Id. ¶¶ 6-7, Ex. B; see also Declaration of Evan C. Guevarra, attached as Ex. 2, ¶ 10, Ex. B.) The FBI did not take into custody any United States currency, gold coins, silver dollars, precious metals, or jewelry before the filing of the Complaint and Indictment or at any time in 2018.  (See id.)

On January 15, 2019, FBI Special Agent Hannah Monroe received an email from Jamie Caloca, a Detective with the LASD Narcotics Bureau Asset Forfeiture unit.  (Ex. 1 ¶ 8, Ex. C.)  The e-mail

2

stated that LASD had U.S. Currency seized from defendant's home and asked the FBI to "take custody of the U.S. currency" because of the pending federal case against defendant.  (Id.)  Detective Caloca stated that "[t]he amounts of the seizures are $42,415.00 and $239,699.00 totaling $282,114.00."  (Id.)

On February 21, 2019, Agent Monroe retrieved the currency from LASD, booked it into FBI custody, and the FBI confirmed that the evidence items contained $282,114.00.  (Ex. 1 ¶ 9; Ex. 2 ¶ 10, Ex. B at 51/58 to 58/58.)  A few days later, Agent Monroe began making arrangements to transfer the money to defendant's counsel. (Ex. 1 ¶¶ 10-11, Exs. D, E.)  After Agent Monroe's involvement in the case ended in June 2019, FBI Task Force Officer Evan Guevarra took over responsibility for returning the money to defendant's lawyers.  (Ex. 1 ¶ 12; Ex. 2 ¶¶ 2-3.)  TFO Guevarra released a total of $282,114.00 to defendant's attorneys in July and August of 2019. (Ex. 2 ¶¶ 3-8; see also Motion for Return of Property, Dkt. 96, at 4-5.)

Several months later, the government disclosed to the defense audio from a podcast during which FBI Special Agent Tony Logan briefly discussed this case.  (Reidy Declaration, attached as Ex. 3, ¶¶ 1-2, Ex. A.)  Agent Logan described how LASD had conducted the initial searches of defendant's residence before the FBI became involved.  Specifically, he stated that, "So, they had already done, I think, on a . . . state level or local level they did some type of warrant.  I forget what it was called, but it's something when if you[r] house isn't up to code they can do some weird type of warrant . . . and they found a whole bunch of, you know, money and, and guns and weird guns he was making and things in the house."  (Dkt. 96,

1  Ex. 9 at 31:16-31:50; _see also_ Ex. 2 ¶ 11, Ex. C at 2:3-14.)  Agent
2  Logan stated that the FBI later worked with LASD on another search
3  of defendant's home.  (Dkt. 96, Ex. 9 at 31:50-31:59; _see also_ Ex. 2
4  ¶ 11, Ex. C at 2:14-15 ("So we ended up actually doing, um, a
5  rollback warrant is when I got involved is we were like, [']hey, we
6  need to go back into that guy's house.[']").)  Agent Logan later
7  made clear that "they," meaning state and local authorities, were
8  involved in both the May 3 and May 31 searches of defendant's home.
9  (Dkt. 96, Ex. 10 at 2:6-20 ("[T]hey hit it, when they did the
10 original warrant on his house . . . they hit his house the first
11 time . . . And the second time, when I was there, they hit his house
12 again.").)

13     Agent Logan went on to describe one seizure of approximately
14 $200,000 to $250,000 from defendant's home on May 3, 2018, all of
15 which has been returned to defendant.  Agent Logan said that when
16 "they hit his house the first time, he had like 200-250,000 dollars
17 cash in his safe.  So, of course we take it cause we're like this
18 guy doesn't have a job."  (_Id._ at 2:8-10.)  Agent Logan then stated
19 that, during the May 31 search, defendant "had another 2 or 300,000
20 dollars of cash."  (_Id._ at 2:12-14.)  Agent Logan never stated that
21 any money was seized during the May 31 search of defendant's home,
22 much less how much money was seized during the search.

23     In connection with preparing this opposition, TFO Guevarra
24 reached out to LASD and asked if there was any other outstanding
25 property of defendant's in LASD custody.  (Ex. 2 ¶ 9.)  In response,
26 the LASD provided property reports indicating that it still had
27 jewelry (including a watch, ring, a chain, and a pendant) and
28 approximately 40 silver dollars in its custody.  (Ex. 2 ¶ 9, Ex. A.)

1   **III.  ARGUMENT**

2       **A.    Legal Standard**

3       Federal Rule of Criminal Procedure 41(g) provides that "[a]

4   person aggrieved by an unlawful search and seizure of property or by

5   the deprivation of property may move for the property's return."

6   Because there are no criminal proceedings pending against defendant,

7   his motion should be treated "as a civil complaint governed by the

8   Federal Rules of Civil Procedure." United States v. Ibrahim, 522

9   F.3d 1003, 1007 (9th Cir. 2008).  The government's opposition should

10  be considered "a motion for summary judgment" requiring this Court

11  to "determine whether the government has demonstrated that there is

12  no 'genuine issue as to any material fact,' and that it is entitled

13  to judgment as a matter of law.'"  Id. (quoting Federal Rule of

14  Civil Procedure 56(c)).

15      This Court must view the evidence in the light most favorable

16  to defendant and all reasonable inferences must be drawn in his

17  favor.  Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1220 (9th

18  Cir. 1995).  But "a non-movant's bald assertions or a mere scintilla

19  of evidence in his favor are both insufficient to withstand summary

20  judgment."  F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009).

21  Similarly, "[c]onclusory, speculative testimony in affidavits and

22  moving papers is insufficient to raise genuine issues of fact and

23  defeat summary judgment."  Soremekun v. Thrifty Payless, Inc., 509

24  F.3d 978, 984 (9th Cir. 2007).

25      **B.    Defendant's Motion Should Be Denied Because the Government
           Does Not Have the Property He Seeks**
26

27      Despite its broad language, the Ninth Circuit has held that

28  Rule 41(g) does not apply to property that "was not and never had

5

1  been in the possession or under the control of the United States
2  government" nor to searches that were not "conducted with the
3  knowledge, approval or cooperation of the United States government."
4  United States v. Huffhines, 986 F.2d 306, 307-308 (9th Cir. 1993).
5  Instead, the Rule "relates to federal searches leading to federal
6  prosecutions" and "to searches conducted by state law enforcement
7  agencies with direct federal authorization."  Id. at 308.
8  Similarly, Rule 41(g) cannot be used to recover property seized by
9  local law enforcement agents in "collaboration" with federal
10 authorities "in the course of which [evidence] w[as] seized by [the
11 local authority] alone."  United States v. Marshall, 338 F.3d 990,
12 994 (9th Cir. 2003) (holding that Rule 41(g) did not apply where
13 local authorities were "working with federal authorities, rather
14 than for them.").

15      If undisputed facts show that the property sought by Rule 41(g)
16 motion is not in federal custody, nor seized during a federal
17 search, nor seized during a search by local officers at the
18 exclusive direction of federal agents, then the motion must be
19 denied.  See id. ("Because the vehicles were never in federal
20 possession or control, and because the state was not acting under
21 direct federal authorization, the district court did not err.");
22 Huffhines, 986 F.2d at 308 (holding that a Rule 41 "order that the
23 FBI return material which it does not have, nor does it have control
24 over, cannot stand"); see also United States v. Solis, 108 F.3d 722,
25 723 (7th Cir. 1997) ("Because the United States was not in
26 possession of the vehicle at the time Mr. Solis filed his [Rule 41]
27 motion, and, indeed, had never been in possession of the vehicle, it
28 is not the appropriate party from which to request its return.");

1   <u>United States v. White</u>, 718 F.2d 260, 261 (8th Cir. 1983)

2   ("Therefore, since the government does not possess White's property,

3   it cannot return his property, and the [Rule 41] motion was properly

4   denied.").

5        Here, defendant's motion must fail for the simple reason that

6   this Court cannot "order that the FBI return material which it does

7   not have." <u>Huffhines</u>, 986 F.2d at 308. At LASD's request, the FBI

8   obtained $282,114 in U.S. currency which had been seized by LASD

9   from defendant's home and placed in LASD custody. (Ex. 1 ¶¶ 8-10,

10  Ex. C.) All of that money has been returned to defendant. (Dkt. 96

11  at 4-5.) The FBI evidence log for defendant's case shows that the

12  FBI has no United States currency, jewelry, coins, or precious

13  metals in its custody. (Ex. 2 ¶ 10, Ex. B.) Rather, LASD records

14  show that many of these items--including the gold watch, gold chain,

15  gold ring, pendant, and silver dollars--were seized by LASD during

16  the May 31, 2018 search and remain in LASD custody. (Ex. 2 ¶ 9,

17  Ex. A.) The fact that LASD felt compelled to make a formal request

18  that the FBI "take custody" of the money that was "in our [LASD]

19  possession" demonstrates the FBI's lack of control over those

20  remaining items in LASD custody. (Ex. 1 ¶ 8, Ex. C.) And neither

21  the LASD nor FBI records reflect the seizure of the precious metals

22  defendant claims he had in his home. Defendant cannot obtain any of

23  this property through a federal Rule 41(g) proceeding.

24       Nor can defendant reasonably claim that the property in LASD

25  custody from the May 3, 2018 search was seized during a federal

26  search or by local law enforcement officers acting exclusively at

27  the behest of federal law enforcement. <u>Huffhines</u> is instructive.

28  In that case, the Ninth Circuit held that members of the Beverly

1    Hills Police Department did not act as agents of the FBI in

2    conducting a search of defendant's home to look for evidence of

3    state offenses which later resulted in a federal felon in possession

4    prosecution.  See Huffhines, 986 F.2d at 307-308 (noting that

5    Beverly Hills Police seizure resulted from execution of state search

6    warrant to look for evidence of defendant's false identification as

7    a peace officer in violation of California Penal Code § 148.9).  The

8    court found that "the fact that Beverly Hills Police furnished the

9    gun" to the FBI and "testified in the firearms prosecution"

10   constituted "limited cooperation" that did not create an agency

11   relationship.  Id.  Because "[t]he Beverly Hills Police could not

12   have been agents of the federal government at the time of the

13   search," the defendant could not pursue a Rule 41 motion for return

14   of property seized during that search.  Id.

15        Here, LASD acted on its own initiative in conducting both the

16   initial home inspection and subsequent search of defendant's home on

17   May 3, 2018, to look for evidence of defendant's involvement in

18   state firearms offenses.  (Ex. 1 ¶ 2; see also Dkt. 53 at 4, 6, 8-

19   10.)  LASD's subsequent cooperation with defendant's federal

20   prosecution does not convert its actions into a federal search or

21   create an agency relationship with the FBI.  Defendant cannot

22   recover any property seized by LASD on May 3, 2018, through this

23   proceeding.

24        The same conclusion holds for property seized from defendant's

25   home on May 31, 2018.  The Ninth Circuit in Marshall addressed a

26   nearly identical circumstance.  In that case, the San Fernando

27   Police Department ("SFPD") arrested the defendant for heroin

28   distribution and seized three of defendant's vehicles.  338 F.3d at

991, 994.  SFPD participated in the search "as part of a 'drug task force' that included both federal and local law enforcement agencies."  338 F.3d at 994.  "The task force was a collaboration, in the course of which the cars were seized by the SFPD alone."  <u>Id.</u> Because "the SFPD was working <u>with</u> federal authorities, rather than <u>for</u> them . . . the vehicles were never in federal possession or control, and . . . the state was not acting under direct federal authorization" when seizing the vehicles.  <u>Id.</u>  Accordingly, the court held the defendant could not recover from the federal government under Rule 41.  <u>Id.</u>

Here, the record shows that LASD conducted the May 31, 2018 search "with federal authorities, rather than <u>for</u> them" and therefore the property LASD seized is not recoverable under Rule 41. LASD independently sought a search warrant for defendant's home to investigate state offenses entirely unrelated to the federal investigation, including the theft of a Jet Ski.  (Ex. 1, ¶ 4, Ex. A.)  While federal agents worked "in coordination" with LASD deputies during the May 31, 2018 search, LASD alone handled the seizure of evidence.  (Ex. 1 ¶ 7, Ex. B.)  Indeed, the FBI evidence log shows that no evidence was seized in connection with defendant's case until June 11, 2018, about 11 days after the May 31, 2018 search.  (Ex. 2 ¶ 10, Ex. B at 1/4 to 4/4, 1/54 to 31/54.) Accordingly, those items that remain in LASD custody--including the gold watch, gold chain, pendant, gold ring, and silver dollars--are outside federal control.  (Ex. 2 ¶ 9, Ex. A.)  As defendant was told in the state court order denying his motion for return of property, if he wants to recover this property, "he must file a proper motion" in state court "noticing the arresting agency and the D.A.'s Office,

specifying what items he seeks released back to him." (Dkt. 96 at 22.)

Because the property defendant seeks is not in federal custody, was not obtained in a federal search, and is not under federal control, his Rule 41(g) motion must be denied.

### C. Special Agent Logan's Statements Do Not Raise a Genuine Factual Issue

The statements made by FBI Special Agent Logan on a podcast do not change the fundamental reality that the federal government does not have any of defendant's property listed in his Motion.

Indeed, Agent Logan's extemporaneous statements on a podcast corroborate other evidence that LASD, rather than the FBI, seized the property that is the subject of defendant's motion. Agent Logan's description of the searches of defendant's property is entirely consistent with the course of events set forth in the declarations and documents submitted with this opposition--an initial local search followed up by a later search with federal involvement. (Dkt. 96, Ex. 9 at 31:16-31:59; see also Ex. 2 ¶ 11, Ex. C at 2:3-15 ("So, they had already done, I think, on a . . . state level or local level they did some type of warrant . . . and they found a whole bunch of, you know, money and, and guns and weird guns he was making and things in the house . . . we ended up actually doing, um, a rollback warrant is when I got involved.").) Furthermore, Agent Logan made clear that "they," meaning state and local authorities, were involved in both the first and second searches of defendant's home. (Dkt. 96, Ex. 10 at 2:6-20 ("[T]hey hit it, when they did the original warrant on his house . . . they

1  hit his house the first time . . . And the second time, when I was

2  there, they hit his house again.").)

3       Contrary to defendant's argument (Dkt. 96 at 8), Agent Logan

4  never stated that the federal government seized $500,000 in U.S.

5  currency from defendant.  Agent Logan merely said that "we," meaning

6  the federal government, seized the "200-250,000 dollars cash" from

7  "the first time" authorities searched defendant's home.  (Dkt. 96,

8  Ex. 10 at 2:8-10.)  This statement is wholly supported by the

9  documentary record and is undisputed: the government took into

10  custody the $239,699 seized by LASD during the first search of

11  defendant's home and ultimately returned it to defendant.  (See

12  Ex. 1 ¶¶ 8-10, Ex. B.; see also Ex. 2 ¶¶ 3-7; Dkt. 96 at 4.)  Agent

13  Logan did not say that either the federal government or LASD seized

14  any U.S. currency during the May 31 search of defendant's home.  He

15  merely commented that defendant "had another 2 or 300,000 dollars of

16  cash" at the time of the second search.  (Mot. to Return Property,

17  Dkt. 96, Ex. 10 at 2:12-14.)  This appears to be an off-the-cuff

18  estimate based on secondhand information--neither Agent Logan nor

19  any other FBI agent counted the money seized from defendant's home

20  on May 31, 2018.  (See Ex. 1 ¶ 5.)  Regardless, the FBI already

21  turned over to defendant the $42,415 that LASD identified as the

22  only funds taken from defendant's home during the May 31, 2018

23  search.[1]  (Ex. 1 ¶ 8, Ex. C.)  Absent a factual dispute that the

24

25  _____

26  [1] Because Agent Logan's statements on the podcast have no bearing on
   the issues necessary to resolve defendant's motion, there is no
27  basis for this Court grant defendant's request for additional
   discovery regarding communications between the FBI and the podcast
28  hosts (Dkt. 96 at 5, n.1).

federal government seized additional money from defendant that it
has not returned, defendant's motion should be denied.

### D. Defendant's Statements Do Not Raise a Genuine Factual Issue

Defendant's declaration should be disregarded because he lacks
any personal knowledge of whether the federal government has seized
or retained his property. See Federal Rule of Civil Procedure
56(d); Hexcel Corp v. Ineos Polymers, Inc., 681 F.3d 1055, 1063 (9th
Cir. 2012) ("Declarations must be made with personal knowledge;
declarations not based on personal knowledge are inadmissible and
cannot raise a genuine issue of material fact."). Here, defendant
asserts that "[t]he government" made a number of seizures but does
not specify whether it was federal or local government officers who
conducted the seizure. (Dkt. 96-1 ¶¶ 4-5, 7.) Defendant has no
firsthand awareness of who seized what because he was not present
for the May 3 or May 31 searches. (See Dkt. 53 at 8-10 (describing
defendant's detention and arrest before searches on May 3, 2018);
Dkt. 1 at 9-10 (describing defendant's detention, arrest, and
interview on May 31, 2018); see also Ex. 1 ¶ 5.) Nor can defendant
generate a factual dispute by making an unsworn, uncorroborated
statement (based on a mischaracterization of Agent Logan's remarks)
that agents seized "an additional $200,000-300,000.00" from his home
on May 31, 2018.[2] (Dkt. 96 at 5.) See, e.g., Ibrahim, 522 F.3d at
1009 (rejecting the defendant's argument that he was entitled to

---

[2] Additionally, defendant never explicitly states in his
declaration that anyone seized the "palladium and more gold
heirlooms" during the searches of his home--he only lists coins as
the items that were seized. (Dkt. 96-1 ¶ 7.) The Court should deny
his motion as to those items defendant does not claim were seized.

recover $400,000 dollars more than what declarations and documents showed federal government had seized based on "his unsworn assertion that he 'knew how much money had been seized, and it was $981,458.00 just as the government had said'"). Absent any competent evidence that the federal government seized any of the unreturned property at issue, defendant's declaration cannot create a genuine issue of fact.

In addition, defendant's sworn declaration is simply not credible. "An inherently untrustworthy account does not create a triable issue of fact." United States v. Check No. 25128 in Amount of $58,654.11, 122 F.3d 1263, 1265 (9th Cir. 1997) (granting summary judgment to the government in forfeiture dispute because the defendant's affidavit was "on its face unworthy of belief"). At the outset, this Court should view defendant's statements with suspicion because of his criminal history. In 2009, defendant was convicted of Possession of 15 or More Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(3), and sentenced to 26 months' in custody. (See Ex. 3 ¶ 3, Ex. B.) This conviction for access-device fraud generally undermines defendant's credibility. See Am. Home Assur. Co. v. Am. President Lines, Ltd., 44 F.3d 774, 779 (9th Cir. 1994) ("Generally, a conviction of fraud is probative of witness's credibility.").

Defendant has failed to dispel this suspicion by presenting the inherently contradictory and unreliable account in his declaration. Defendant's statements about the amount of money seized from his home on May 3 and May 31, 2018, directly conflict his earlier statements on the subject. See Radobenko v. Automated Equipment Corp., 520 F.2d 540, 543-44 (9th Cir. 1975) (rejecting argument that

"contradictory testimony of a [party] alone can be used" to create a genuine issue of fact).  In his declaration (Dkt. 96-1), defendant now states that the government seized $500,000 over the course of the May 3 and May 31 searches of his home and that he has consistently "maintained this posture throughout the pendency of my case, as the record will reflect."  (Dkt. 96-1 ¶¶ 4-5.)  But in his 2018 state court motion, defendant said that law enforcement seized all $500,000 during the May 3, 2018 search.  (See Dkt. 96 at 17 ("Defendant, Franz Grey asserts that . . . the property that is listed in . . . Exhibit A1 . . . was seized from the defendant on May 3, 2018.").)  Moreover, in his May 3, 2018 statement to LASD deputies,[3] defendant stated that he did not know how much money was in his safe before stating that it contained just $50,000:

    SGT. WOLANSKI: How much money do you have in there?

    DEF.: I don't know.  Is it still there even?

    . . .

    DEP. LOPEZ: Can you take an estimate, a guess, on how much money you think was in those, in your safe or in the bags?

    DEF.: Is it still in there?

    SGT. WOLANSKI: A thousand dollars?

    DEF.: More, more. Probably like, 50.

---

[3] Although this Court suppressed these statements, (Dkt. 53 at 16-17), they are nevertheless admissible to impeach defendant's sworn testimony in his declaration that he has maintained that the government seized $500,000 cash "throughout the pendency of my case, as the record will reflect" (Dkt. 96-1 ¶ 4).  See United States v. Havens, 446 U.S. 620, 627-28 (1980) ("[D]efendant's statements . . . are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained."); United States v. One 1979 Porsche Coupe, Vin 9289200514, 709 F.2d 1424, 1428 (11th Cir. 1983) (previously excluded evidence admissible to impeach forfeiture claimant's testimony).

1     SGT. WOLANSKI: 50 thousand?

2     DEF.: Probably.

3  (Ex. 3 ¶ 4, Ex. C at 00:24-00:27, 01:21-01:36.)

4     The multiple versions of defendant's story (each entirely

5  devoid of documentary corroboration in the form of receipts,

6  withdrawal slips, ledgers, etc.) further demonstrate defendant's

7  reliance on conjecture when stating what was seized from his home,

8  when, and by whom.  Defendant should not be permitted to manufacture

9  a factual dispute based on his contradictory and speculative

10  testimony.  See Korkosz v. Clark County, 379 F. App'x 593, 596 (9th

11  Cir. 2010) (affirming district court's refusal to consider party's

12  "uncorroborated, self-serving speculation").

13     **E.   Statements from Defendant's Family Members Do Not Raise a
       Genuine Factual Issue**

14

15     Similarly, declarations from defendant's mother and sister-in-

16  law do not create a factual issue because neither individual has

17  personal knowledge of what was seized from defendant's residence,

18  when, or by whom.  See Hexcel Corp, 681 F.3d at 1063.  Moreover,

19  defendant's sister-in-law's statement that defendant had $500,000

20  cash and 100 coins in his safe in November 2018 (Dkt. 96-3 ¶¶ 3-5),

21  has no bearing on the amounts seized from defendant's home in May

22  2018 and, indeed, directly undercuts defendant's claims about those

23  seizures.  Defendant's mother merely points out that she gave him

24  the items that are currently in LASD custody.  (Dkt. 96-2.)  Neither

25  declaration creates a material factual issue.

26     **F.   An Evidentiary Hearing Is Not Necessary**

27     This Court need not hold an evidentiary hearing in this matter

28  because the undisputed evidence demonstrates that none of the

15

property defendant seeks is in federal custody or control.  Although the rule does provide that "[t]he court must receive evidence on any factual issue necessary to decide the motion," "[t]his requirement does not mean that a district court must conduct an evidentiary hearing to resolve all factual disputes." United States v. Stevens, 500 F.3d 625, 628 (7th Cir. 2007).  "Such evidence may come, for example, in the form of sworn affidavits or documents verifying the chain of custody of particular items." Id.; see also Stevens v. United States, 530 F.3d 502, 506 (7th Cir. 2008) (affirming denial of Rule 41(g) motion without evidentiary hearing "based on the Government's undisputed evidence, that the Government no longer possessed Mr. Stevens' property"); United States v. Albinson, 365 F.3d 278, 281-82 (3d Cir. 2004) ("We note at the outset that a district court need not necessarily conduct an evidentiary hearing on every Rule 41(g) motion.").  This Court should be particularly reluctant to hold a "Rule 41(g) hearing to allow . . . the opportunity to question [a] federal agent as to [the] disposition of funds the Government neither seized nor possessed." United States v. Omondi, 369 F. App'x 487, 491 (4th Cir. 2010) (affirming denial of Rule 41(g) hearing in proceeding in which they learned that some of their property remained in the hands of a third party).

Here, the government has submitted sworn declarations and documentary evidence showing that the federal government does not have any of the property defendant seeks.  Because those facts are the only ones "necessary to decide the motion" and are not disputed, no evidentiary hearing is necessary.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion for return of property without holding an evidentiary hearing.